UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PATRICK DONOHUE, as Parent and Natural
Guardian of S.J.D., and PATRICK DONOHUE,
Individually, *et al.*

                              Plaintiffs,                            Docket No. 22-cv-08998 (JPC)

      -against-

DAVID C. BANKS, in his official capacity as
Chancellor of the New York City Department
of Education;

NEW YORK CITY DEPARTMENT OF
EDUCATION; and BRAD LANDER, in his
official capacity as Comptroller of the City of
New York.
-----------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER OPPOSITION
TO DEFENDANTS' CROSS-MOTION & IN FURTHER REPLY IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Respectfully submitted,

Ashleigh C. Rousseau, Esq. (5801923)
Rory J. Bellantoni, Esq. (RB 2901)
Brain Injury Rights Group, Ltd.
300 E. 95th Street, #130
New York, New York 10128
ashleigh@pabilaw.org
rory@pabilaw.org

## **<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................2

   I.   UNDER THE IDEA AND CONTROLLING CASE LAW IN THIS DISTRICT THE DOE IS REQUIRED TO PAY FOR TRANSPORTATION WHETHER OR NOT THE RIDES ARE "ACTUALLY TAKEN" ..............................................................2

   II.   THE SPECIAL MASTER'S REPORT IN LV INSINUATES THAT DEFENDANTS' BEHAVIOR BORDERS ON WILLFULNESS ....................................6

   III.   DOE WAS REQUIRED TO SEEK A STAY OF PENDENCY ORDERS IT NOW CONTESTS ............................................................................................................10

   IV.   THE DOE RESORTS TO A MISLEADING READING OF THE UNDERLYING ADMINISTRATIVE ORDERS TO SHIRK ITS DUTIES UNDER FEDERAL LAW ......................................................................................................................11

   V.   DOE'S PROPOSED "RUBRIC" FOR REIMBURSEMENT IS INEQUITABLE ...........16

   VI.   PLAINTIFFS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR .........................18

CONCLUSION .........................................................................................................................21

# <u>TABLE OF AUTHORITIES</u>

Page No.

## <u>Cases</u>

*Abrams v. Carranza*
No. 19-cv-4175 (AJN), 2019 U.S. Dist. LEXIS 95403 (S.D.N.Y. June 6, 2019) ..................... 19

*Abrams v. New York City Dep't of Educ.*
No. 20-CV-5085 (JPO), 2022 WL 523455 (S.D.N.Y. February 22, 2022) ............... 4, 5, 15, 17

*Cave v. E. Meadow Union Free Sch. Dist.*
514 F.3d 240 (2d Cir. 2008) ........................................................................................... 11

*City of Los Angeles v. Lyons*
461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ......................................................... 3, 9

*D.C. v. Vinyard*
901 F. Supp. 2d 77 (D.D.C. 2012) ..................................................................................... 9

*Drinker by Drinker v. Colonial Sch. Dist.*
78 F.3d 859 (3d Cir. 1996) ......................................................................................... 9, 10

*F.K. v. Dep't of Educ.*
2012 U.S. Dist. LEXIS 177192 (Haw. D.C. 2012) ................................................................ 10

Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter
510 U.S. 7 (1993) ........................................................................................................... 20

*Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Suggs*
562 F. Supp. 2d 141 (D.D.C. 2008) .................................................................................... 2

*Honig v. Doe*
484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) .......................................................... 3, 9

*Jackson v. City of Peoria, Illinois*
825 F.3d 328 (7th Cir. 2016) ............................................................................................ 16

*LV v. New York City Dep't of Educ.*
No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021) ...................... passim

*M.R. v. Ridley Sch. Dist.*
744 F.3d 112 (3d Cir. 2014) ............................................................................................... 2

*McKenzie v. Smith*
771 F.2d 1527 (D.C. Cir. 1985) ......................................................................................... 10

*Mendez v. Banks, et al.*
No. 22-2663 (2d Cir.) (April 12, 2023) ............................................................................... 20

*Monahan v. State of Neb.*
491 F. Supp. 1074 (D. Neb. 1980), *aff'd in part and vacated in part,* 645 F.2d 592 (8th Cir. 1981) ........................................................................................................................... 9

ii

*Murphy v. Hunt*
    455 U.S. 478, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982) ........................................3, 9

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*
    703 F.2d 700 (3d Cir. 1983) ........................................................................20

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*
    478 F. Supp. 2d 496 (S.D.N.Y. 2007) ..........................................................14

*Petties v. D.C.*
    881 F. Supp. 63 (D.D.C. 1995)...........................................................3, 9, 10

*R.S. v. New York City Dep't of Educ, et al.*
    No. 21-cv-02257 (JPO) (S.D.N.Y. 2021) ..................................................3, 18, 19

*S.H.W. and W.S.C., individually and on behalf of their minor child, M.C., Plaintiffs, v. NEW YORK CITY DEPARTMENT OF EDUCATION, Def..*
    21 CIV. 4808 (JPC), 2023 WL 2753165 (S.D.N.Y. March 31, 2023) .....................20

*St. Tammany Par. Sch. Bd. v. State of La.*
    142 F.3d 776 (5th Cir. 1998) .......................................................................10

*Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*
    96 F.3d 78 (3d Cir. 1996) ...........................................................................10

*Tonya K. by Diane K. v. Chicago Bd. of Educ.*
    551 F. Supp. 1107 (N.D. Ill. 1982)..................................................................8

*Ventura de Paulino v. New York City Dep't of Educ.*
    959 F.3d 519 (2d Cir. 2020) ........................................................................20

*Wagner v. Bd. of Educ. of Montgomery Cnty.*
    335 F.3d 297 (4th Cir. 2003) .......................................................................20

*Zvi D. by Shirley D. v. Ambach*
    694 F.2d 904, 906 (2d Cir. 1982) ...............................................................9, 10

## **Statutes**

20 U.S.C. § 1415(i)(2) ..........................................................................................2

20 U.S.C. § 1415(i)(2)(B).......................................................................................11

20 U.S.C. § 1415(i)(2)(C)(iii)..................................................................................20

## **Other Authorities**

Coronavirus in NY: City Spending $5.9M a Day For Idled School Buses (New York Post April 4, 2020), *available at* https://nypost.com/2020/04/04/nyc-spending-5-9-million-a-day-for-idled-school-buses/ ..........................................................................13

## PRELIMINARY STATEMENT

Though DOE prefers to frame the issue here as "whether DOE is required to fund the cost of…transportation services…on days when those students did not physically attend iBRAIN where the underlying administrative orders explicitly link funding to attendance," this self-serving description is not only misleading but borders on outright frivolity.

First, DOE has obstinately refused to reimburse Parent-Plaintiffs for **any** transportation costs, even though there is no evidence or even allegation that any student did not physically attend iBRAIN on any given day (never mind *all* the days, since DOE refuses to reimburse *all* transportation costs). Second, the underlying administrative orders ***do not explicitly link funding to daily attendance***. Nor do they permit DOE to unilaterally demand post-hearing, non-party discovery before complying with the Order, as the DOE thinks it has a right to do.

Plaintiffs submit that for all the Student-Plaintiffs, the phrase "transportation services" in the underlying administrative orders means the service and costs for that service that the Plaintiff-Parents must pay by contract, not rides actually taken. This is the plain language, common sense reading of the underlying administrative orders, and reflects the economic reality faced by Parents trying to secure specialized transportation for their disabled and, in many cases, medically fragile children, such as the Student-Plaintiffs here. To avoid this clear and obvious result, the DOE is left to argue a tortured, nonsensical, and sometimes misleading interpretation of the language in the underlying orders. The DOE's arguments have already been rejected by multiple other judges in the Southern District of New York, as well as the Impartial Hearing Officers ("IHOs") and State Review Officers ("SROs") who have considered the DOE's arguments. But because the DOE cannot (or simply refuses to) distinguish these decisions, DOE must resort to arguing that this Court should ignore case law and precedent directly on point.

DOE should not be allowed to continue advancing its meritless argument based on an overly narrow reading of the underlying administrative orders, which has been rejected by every tribunal that has considered it, and to continue ignoring its federal obligations under the IDEA. While DOE has withheld its federally mandated payments since the start of the school year, it has not otherwise arranged for public transportation to which every Student within its jurisdiction is entitled. Accordingly, the Plaintiffs contend that their motion for summary judgment must be granted, and DOE must be ordered to fund the entire cost of the disputed contracts for transportation, tuition, and all other services to which these children are entitled.

## **ARGUMENT**

### I. UNDER THE IDEA AND CONTROLLING CASE LAW IN THIS DISTRICT THE DOE IS REQUIRED TO PAY FOR TRANSPORTATION WHETHER OR NOT THE RIDES ARE "ACTUALLY TAKEN"

As the Parties agree, ten Student-Plaintiffs in this action have orders placing them at iBRAIN, and the orders for the students at issue include door-to-door transportation. Once a student receives an administrative order placing them in a special education program, the IDEA prohibits a school district from unilaterally changing the terms of that Order by, for example, refusing to fund the Order. *See Friendship Edison Pub. Charter Sch. Chamberlain Campus v. Suggs*, 562 F. Supp. 2d 141, 143 (D.D.C. 2008) ("Nowhere in the IDEA… is there a corresponding right of an education provider to decline to implement a Hearing Officer's Decision in a student's favor automatically, ***without seeking a stay of that Decision*** from either the Hearing Office or the Court in which further proceedings have been commenced under 20 U.S.C. § 1415(i)(2).") (emphasis added). Because "financing goes hand-in-hand with…placement," *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 122 (3d Cir. 2014), DOE must pay each Student-Plaintiffs' private school tuition at iBRAIN and related services, such as transporting each Student-Plaintiff to and from their homes and iBRAIN daily.

2

DOE's obligation to pay for the tuition and transportation services that the Plaintiff-Parents contracted for seems straightforward and certainly not the basis for a federal lawsuit. There is no valid reason for the DOE's refusal to fulfill these administrative orders, and the DOE cites no authority (because there is none) that gives it the right to do so unilaterally. In fact, the DOE must resort to urging this Court to *ignore* the prior Southern District of New York decisions, more thoroughly discussed below, which directly address this issue. This is unsurprising–since the start of the COVID-19 pandemic in March 2020, the DOE has sought several ways to avoid its obligations to the students for whom the DOE was ordered to pay for a private placement.[1] The DOE's refusal to satisfy its obligations under the IDEA causes anxiety on behalf of Parents who don't know whether they will have to reimburse their child's school for tuition and/or transportation (a cost that few, if any, families can bear) and disrupts the routines and educations of some of the severely disabled children who benefit from the IDEA. *Petties v. D.C.*, 881 F. Supp. 63, 69 (D.D.C. 1995) ("Furthermore, because of the history of the payment practices of the DCPS and the District of Columbia's continuing financial woes, there is "a sufficient likelihood that [the class members] will again be wronged in a similar way" if relief is not granted. Because Defendants have established a routine of paying some past due bills once faced with litigation, Plaintiffs have also demonstrated that any resulting claim they may have for relief is not moot because the conduct they complain of is "capable of repetition, yet evading review." citing *Honig v. Doe*, 484 U.S. 305, 323, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983); *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)).

---

[1] See *R.S. et al. v. New York City Department of Education*, 1:21-CV-02257 (JPO) Coronavirus Covid 19. The defendant discriminated against the plaintiff on basis of disability and failed to implement IHO decisions under IDEA in a timely fashion.

This Court repeatedly rejected the DOE's attempts to shirk its responsibilities to these families and students and has ordered the DOE to fulfill its obligations. *See LV v. New York City Dep't of Educ.*, No. 03-CV-9917 (LAP), 2021 WL 663718 (S.D.N.Y. February 18, 2021) (DOE refuses to reimburse for tuition payments, but was ordered to pay in full) and *Abrams v. New York City Dep't of Educ.*, No. 20-CV-5085 (JPO), 2022 WL 523455 (S.D.N.Y. February 22, 2022) (DOE refused to reimburse transport costs and was ordered to pay in full). The plaintiffs in *LV* and in *Abrams* were students for whom the DOE was required to reimburse private school tuition. In mid-March 2020, when schools across the country shuttered in response to the COVID-19 pandemic, the DOE claimed that the schools' remote learning plans were unsatisfactory and unilaterally stopped paying the tuition at the schools the plaintiffs attended. The *LV* Court rejected the DOE's argument, finding that the DOE's requested relief would require the Court to "rewrite the [IDEA]" to "provide school districts with the authority to reassess unilaterally the facts underlying final, binding orders." *Id.*

The "changed circumstances" brought about by the COVID-19 pandemic did not alter the economic reality of the plaintiffs, who had signed year-long contracts with their private schools that they were obligated to pay in full. These contracts were between the plaintiffs and the school, and the DOE did not have the right to insert itself in the contractual relationship by demanding that plaintiffs sue for recission. The *LV* Court was also unpersuaded by the DOE's "protecting the public fisc" argument, finding that "the economic bind in which DOE finds itself does not afford it a roving commission to re-evaluate the propriety of Orders that the IDEA and New York law make plain are final and binding." *LV*, 2021 WL 663718, at *8.

After its loss in *LV*, the DOE began refusing to pay for transportation services included in these orders. In *Abrams*, the DOE argued that it was not required to reimburse transportation costs

during the first three months of the COVID-19 shutdowns (approximately March-June 2020) because no transportation was provided, as all of the subject students were learning remotely from their homes. This Court rejected that argument, finding that *even though no transportation had taken place*, the DOE was still obligated to pay the transportation costs, because the families had a contract with the transportation company that was not voided by the COVID-19 shutdown. Because "the Agreements plainly provide that payment is required whether the student uses the services or not, unless Sisters is at fault for the student not utilizing the services," plaintiffs, and therefore DOE, was required to pay the contract in full. *See id* at 3.[2]

But DOE persists. Undeterred by the failure of its arguments in *LV* and *Abrams*, the DOE now goes one step further: not only will it not provide payment for transport not actually provided (even though it was ordered to do exactly that in *Abrams*), but here, the DOE has also assumed (with no basis) that no transportation took place, and puts the burden on Plaintiff-Parents to prove otherwise. DOE cites no caselaw or authority that it is allowed to make this assumption and is entitled to demand any documents from the Plaintiffs. Instead, DOE relies on an illogical interpretation of the language in the students' administrative orders and insists this Court should ignore the decisions of other judges in this district.

As further set forth below, there is no basis for the DOE's continued refusal to pay for the services these families contracted to provide their severely disabled children with an education. The contempt that the DOE shows for its obligations under the IDEA, for the prior two orders of this Court, and for the families and students for whom *by law* the DOE is required to provide a FAPE (and *by law* is required to pay for appropriate services if the DOE cannot provide those

---

[2] Incidentally, that schools had to continue to pay their bus drivers and contracted transportation companies during the COVID-19 shutdown should not come as a surprise to DOE, as it was widely reported that DOE continued to pay its own bus drivers and contracted transportation companies during spring 2020. https://nypost.com/2020/04/18/nyc-set-to-pour-700m-down-the-drain-on-idle-school-buses/.

services itself) is shocking. DOE cavalierly toys with children's education because of what looks like a vindictive drive to deprive iBRAIN and Sisters of the money they are legally and contractually owed. If DOE no longer wants to pay iBRAIN and/or Sisters, it is free, at any point, to provide these students with a FAPE and/or provide transportation for these students. But given a choice between providing these children with a free appropriate public education themselves or paying a private school, under an administrative order, to provide the children with an appropriate education, DOE has chosen neither—instead preferring to ignore its obligations under federal law. DOE's behavior cannot be permitted to continue.

## II.  THE SPECIAL MASTER'S REPORT IN LV INSINUATES THAT DEFENDANTS' BEHAVIOR BORDERS ON WILLFULNESS

On April 6, 2023, David Irwin, the Special Master appointed by Judge Preska, issued his Final Report and Recommendation concerning the inner functioning of DOE and, more specifically, the DOE's Implementation Unit ("IU"), which is responsible for the timely implementation of both pendency and Final Orders. Besides finding that DOE failed to use the documents from the underlying hearing to implement orders (resulting in the need for additional requests) in *LV*, 2021 WL 663718, 03-cv-09917 [ECF No. 307, p. 35], Special Master Irwin also found that the "minimum goal" for Authorizers (who authorize the payments) paled at a mere 12 cases a day compared to their individual caseloads of approximately 2,100 cases. *LV*, 2021 WL 663718, 03-cv-09917 [ECF No. 307, p. 43] ("As of 2/23/2022, there are 7 Authorizers on staff to process payments, and 5 openings for the role. It was conveyed that the average caseload is 2,100 action items per Authorizer, and the goal is a minimum of 12 per day.").

Apparently, in the 20 years the agency has litigated LV, DOE has yet to comply with the IDEA by employing efficient mechanisms to ensure timely payment practices. This is not by happenstance. This is not a benign fact that DOE has "overlooked" for the last 20 years. Instead,

DOE continues with its own deficient payment practices at its leisure **because it wants to**—and nobody has stepped up to end their contemptuous behavior. DOE's conduct is not without significant consequences, however. As Special Master Irwin found:

> **Many schools and providers are financially impacted by the delays having to scale back services to NYC DOE**, build contingency funds, request emergency funding, etc. **This also often causes providers to increase their rates to compensate for the fact that DOE is always delayed in making payments**.

*LV*, 2021 WL 663718, 03-cv-09917 [ECF No. 307, p. 49 ("Implications") (emphasis added)].

It is only a matter of time before schools and providers begin rejecting students, or disenrolling students, because of DOE's inconsistent payment practices. Schools will be encouraged to prioritize the placements of those students who have the means to ensure that payment will be made timely. Ironically, in this action, Defendants argue that DOE need not pay for special transportation for those days when the child did not ride the bus, if any, as long as an attendance record proves the attendance. Essentially, the Defendants' long-winded argument is simple—DOE believes the costs to be "unreasonable." Otherwise, as cited in Plaintiffs' initial briefings and fn. 1, *supra*, why would DOE pay to have their school buses sit in a vacant lot during the COVID-19 shutdown, but reject payment for a handicapped bus/van for a child in a wheelchair? Though Defendants are careful not to admit it, the answer is simple. DOE believes the costs are excessive and will not fund them.

Yet the Special Master's report shows that DOE is abundantly aware that its payment practices lead to "price hikes" when it fails to remit full payments on time—but it has not remedied this problem. In fact, DOE goes so far as to stick its head in the proverbial sand when faced with orders to pay. The Special Master noted:

> **Prior Finding A-13** All payees report that submitting paperwork and invoices results in no reply or any acknowledgment by any DOE staff or system (until a check is eventually received). Several interviewees referred to it as a "black hole."

**Implications** Relationships with providers are damaged. Trust in the NYC DOE as a responsible institution is essentially non-existent among stakeholders.

*LV*, 2021 WL 663718, 03-cv-09917 [ECF No. 307, p. 50].

Indeed, rather than employ proactive measures to correct the problem (or rather, problems), DOE continues to flaunt its non-compliance flagrantly, and then, once a civil action is commenced, under the watchful eye of the Court, Defendants will reluctantly remit some (but not all) payments for the Student-Plaintiffs. The Special Master's report confirms that the DOE will not proactively implement orders unless a "watchful eye" is present. Instead, the amount owed is broken into "increments" that are remitted once "individually authorized."

**Prior Finding X-2** Pendency Agreement payments for tuition are made in increments (half up front) - there is no scheduling of payments so all increments need to be individually authorized.

*LV*, 2021 WL 663718, 03-cv-09917 [ECF No. 307, p. 52].

It appears that Defendants have "taken a page" from DOE's practices in *Petties v. District of Columbia*, where the D.C. District Court found DCPS payment practices contrary to the IDEA and harmful to the Student-Plaintiffs. The Court found, in pertinent part:

**Defendants' current payment practices do not guarantee that the DCPS will in the future pay in full or on time; and there has been no indication that the DCPS' long-standing payment practices have changed except in a piecemeal fashion in response to litigation. There is no evidence that, even with respect to the few placements that defendants have now paid in part or in full, the DCPS has removed the threat of further late and partial payments that will likely lead to loss of placements or services, or that the current practices of the DCPS adequately deal with the emotional and mental stress caused by defendants.**

The defendants cannot moot the claims of the entire class by mitigating the damages of some of the plaintiffs on a piecemeal basis after suit has been filed. *See Tonya K. by Diane K. v. Chicago Bd. of Educ.*, 551 F. Supp. 1107, 1112 (N.D. Ill. 1982). **Making partial payments in response to a lawsuit does not eliminate the consequences suffered by the plaintiffs from the uncertainties associated with the DCPS' payment practices; the harm to plaintiffs will continue unless the DCPS provides assurances that payments will be timely and fully made.** Furthermore, because of the history of the payment practices of

the DCPS and the District of Columbia's continuing financial woes, there is "a sufficient likelihood that [the class members] will again be wronged in a similar way" if relief is not granted. *Honig*, 484 U.S. at 323 (quoting *City of Los Angeles*, 461 U.S. at 111). **Because defendants have established a routine of paying some past due bills once faced with litigation**, plaintiffs have also demonstrated that any resulting claim they may have for relief is not moot because the conduct they complain of is "capable of repetition, yet evading review." *Id.* at 318 (quoting *Murphy*, 455 U.S. at 482).

**To show that irreparable harm will occur absent an injunction, the plaintiffs do not have to wait until the DCPS' payment practices inevitably result in a student's placement being terminated.** The plaintiffs have demonstrated that once a termination has occurred, the harm is irremediable. Once a student loses his or her placement at a private educational provider, the spot at the institution will quickly be filled and there is no guarantee that room for the displaced Student will soon become available there. Furthermore, it is unlikely that a student whose placement is terminated by one private institution will be able to find placement or services elsewhere.

*Petties*, 881 F. Supp. at 69 (emphasis added) (internal docket citations omitted).

In *Petties*, the Court rejected DOE's arguments, holding that maintaining the students' placements trumped any "monetary loss" that DOE would incur. *Petties*, 881 F. Supp. 63. Indeed, **nothing at all**. The IDEA expressly prohibits this. *Zvi D. by Shirley D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) ("To cut off public funds would amount to a unilateral change in placement, prohibited by the Act.") citing *Monahan v. State of Neb.*, 491 F. Supp. 1074, 1089 (D. Neb. 1980), *aff'd in part and vacated in part,* 645 F.2d 592 (8th Cir. 1981); *Petties*, 881 F. Supp. at 66 ("Failing to make payments in whole or in part or cutting off funds for special education programs amounts to a unilateral change in students' placement, which is prohibited by the IDEA."); *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 865 (3d Cir. 1996) ("implicit in the maintenance of the status quo is the requirement that a school district continue to finance an educational placement made by the agency and consented to by the parent before the parent requested a due process hearing. To cut off public funds would amount to a unilateral change in placement, prohibited by the Act."); *D.C. v. Vinyard*, 901 F. Supp. 2d 77, 83 (D.D.C. 2012) ("maintenance of a child's

current placement includes full payment for the program in which the Student is placed, and a failure by the school district to fund a child's current educational placement constitutes grounds for stay-put injunctive relief."); *F.K. v. Dep't of Educ.*, 2012 U.S. Dist. LEXIS 177192, *47, fn 16 (Haw. D.C. 2012) (citing *Zvi D. by Shirley D.*, 694 F.2d 904, *Drinker,* and *Petties*, 881 F. Supp. 63.

### III.   DOE WAS REQUIRED TO SEEK A STAY OF PENDENCY ORDERS IT NOW CONTESTS

In the Third, Fifth, and D.C. Circuits, even though pendency Orders qualify as interlocutory orders, the party seeking to appeal the decision **must seek a stay of the underlying Order**. *See Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78 (3d Cir. 1996) ("This case comes to us in an interlocutory posture; the public school district has asked us to review the district court's Order denying a Motion for Stay Pending Appeal. This denial effectively directs that the Student remains in the private school placement and that this placement be funded by the local public school district pending resolution…"); *St. Tammany Par. Sch. Bd. v. State of La.*, 142 F.3d 776, 781 (5th Cir. 1998) ("The district court denied the State defendants' motion for a stay pending appeal, and ordered immediate enforcement of the stay-put order."); *McKenzie v. Smith*, 771 F.2d 1527, 1530 (D.C. Cir. 1985) ("DCPS did not comply with the hearing officer's Order, nor did it seek a stay. Instead, on January 7, 1983, DCPS filed a complaint in the Superior Court of the District of Columbia asking the Court to vacate the hearing officer's determination that a residential placement was necessary and to order placement at Coolidge.").

Here, Defendants only raise the issue *after* the time to appeal the Plaintiff-Students' orders have expired. Defendants did not seek a stay of the Student-Plaintiffs orders. Instead, Defendants simply took a self-help, "no pay" position, claiming that specific documentation (*e.g.,* attendance records differentiating between in-person and remote attendance) is required to make pendency

payments. As mentioned in the Plaintiffs' initial brief, **the DOE itself does not keep the attendance records it seeks.** Defendants do not track days when their students attend school in-person or remotely. The DOE's attendance records make no differentiation. *See* ECF No. 41-1; *cf.* ECF No. 41-2. Much like iBRAIN, Defendants only mark students "present" or "absent," as seen in ECF No. 41-2, and <u>do not</u> delineate or differentiate those days when Students received remote services. Essentially. Defendants ask Plaintiffs to prove their case again after prevailing in the underlying administrative proceedings.

## IV.  THE DOE RESORTS TO A MISLEADING READING OF THE UNDERLYING ADMINISTRATIVE ORDERS TO SHIRK ITS DUTIES UNDER FEDERAL LAW

For three students–A.D., O.F.,[3] and M.C.–the underlying administrative orders [ECF Nos. 65-12, 65-14, and 65-7, respectively] require DOE to pay for "door-to-door" transportation "to and from" the Student's home to iBRAIN. This language is the standard language used to indicate that the transportation services must be from the Student's front step or nearest curb (and not, *e.g.*, from a communal bus stop) because the Student is non-ambulatory or otherwise cannot independently travel to a communal bus stop. The language does not mean what the DOE wants it to mean. No amount of tortured analysis or linguistic gymnastics will transform this boilerplate language into language, entitling the DOE to unilaterally withhold payment until it receives the non-party discovery it demands. Any attempt by the DOE to argue otherwise is specious and disingenuous, and should be rejected.

---

[3] DOE contends that O.F. is no longer entitled to transportation funding, but there is still an unpaid balance of $60,114 for transportation up to February 2023. Pursuant to 20 U.S.C. § 1415(i)(2)(B), the Parents have *at least* ninety (90) days to seek a review of the SRO's decision unless otherwise provided by State law. *See, e.g., Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008). Thus, Defendants are obligated to continue funding Y.M.'s educational placement through the time to appeal. In addition, the Parents of O.F. intend to appeal the February 2023 FOFD denying transportation, and therefore O.F. continues to be entitled to reimbursement for transportation under the October 28, 2022, pendency order [ECF 65-14].

For Student-Plaintiff Y.N.,[4] the FOFD for the 2022-2023 school year orders the DOE to "directly fund Student's special transportation in the amount outlined in the 'School Transportation Service Agreement'" [ECF 65-28]. There is no limiting language. In any event, the DOE has not funded Y.N.'s transportation since October 2022, leaving a balance of $64,500 for transportation. The DOE makes no argument (because there is none to make) as to why Y.N.'s transportation is several months in arrears, and the DOE should be ordered to immediately and fully fund Y.N.'s transportation.

Three other students–S.J.D., J.B., and A.J.C.B.–have language in their underlying administrative orders [ECF Nos. 65-17, 65-4, and 65-21, respectively] that require the transportation services to be "actually provided." For one Student, M.B., the underlying administrative Order [ECF 65-1] conditions reimbursement on the transportation company "provid[ing] an itemization of transportation services actually provided to the Student." DOE believes this language moves it slightly closer to its ultimate goal of denying reimbursement for transportation services to these students, but only if one adopts a definition of "services" that is unreasonable, irrational, and does not reflect economic reality. The transportation services are the services outlined in the transportation contract.

DOE's argument presumes that "services" in the underlying administrative orders should be defined as "rides" actually provided, not what is contracted for. But the orders do not use such language as rides provided—they only ensure the services are contracted for, much like a student is not entitled to tuition reimbursement without an obligation to pay the tuition to the private school. But this is simply not how contracts for "services" work. As an example, many people pay

---

[4] Although Plaintiff initially sought reimbursement for Y.N.'s nursing services, upon further review of the underlying administrative orders plaintiff now withdraws that claim. Plaintiff continues its claim of reimbursement for tuition and transportation.

for home internet "services." You are paying for the internet provided to your home, available at your convenience. You are not paying for the actual delivery of information via the internet. If you go on vacation for two weeks and do not use any home internet services, you do not get to pay Spectrum half of what you owe because you did not actually use the service for the two weeks you were away.

The same goes for virtually every other services contract–every parent knows that you have to pay for your child's daycare, even if your child is sick and unable to attend for the week. We all have to pay for our cell phone service, even if we make no calls and receive no texts for the day. Likewise, the Plaintiffs here have contracted for transportation "services"–a ready, willing, and able ride for their student who uses a wheelchair to take to school daily. In other words, the "Service" Parent-Plaintiffs contract for–and for which Plaintiffs are to be reimbursed–is not an actual ride. It is the availability of a ride to be used at the family's demand. If a student is sick or otherwise incidentally unable to go to school, the Parents still must pay for the transportation service, even though they may not actually use the ride.

Thus, DOE's proposed definition of "services"–the only definition under which DOE is relieved of its obligation to fully reimburse Plaintiffs for their transportation costs–is nonsensical and irrational. And in fact, DOE understands this because DOE's own contracts with bus companies require it to pay the companies it contracts with for transportation "services" even if no rides are actually provided or taken. *See* Coronavirus in NY: City Spending $5.9M a Day For Idled School Buses (New York Post April 4, 2020), *available at* https://nypost.com/2020/04/04/nyc-spending-5-9-million-a-day-for-idled-school-buses/ (Under contracts with school bus companies, the [DOE] was obligated to pay 85% of the daily fees when schools were shut for snow or other emergencies if the days are not made up later). If DOE, an economic behemoth with unparalleled

bargaining power, cannot secure a contract requiring it to pay only for "rides actually provided," one wonders how it expects individual Parents of significantly disabled children to do the same.

For the same reasons, transportation for Student Z.C. must also be fully reimbursed by the DOE. Although the language in Z.C.'s Order provides for transportation costs "for the actual number of days…Student was transported," [ECF No. 65-11] such language was based on the IHO's incorrect analysis of the contract between Z.C.'s family and the transportation company as a contract of adhesion. An IHO has no authority to interpret a contract in the manner she did. The DOE also lacks standing to attack the Plaintiffs' contract with their transportation providers. If this isn't clear under black letter contract law, Judge Preska and Judge Oetken make it clear in *Abrams* and *LV*.

As noted by Judge Preska in *LV,* the DOE's reliance on contract rules is misplaced because the tuition contracts at issue are between schools and parents. *LV v. New York City Dept. of Educ.*, 03-CV-9917 (LAP), 2021 WL 663718, at *6 (S.D.N.Y. February 18, 2021). DOE is not a party to those contracts, and it offers absolutely no authority to suggest that it can, in any way, enforce those contracts' terms. *Id.* The DOE's invocation of unjust enrichment principles is similarly misguided, as "[A]n unjust-enrichment claim does not lie where a valid, enforceable written contract governs the... subject matter"--which the tuition contracts between schools and parents indisputably do--and that rule applies even though DOE "was not a party to the contract." *LV v. New York City Dept. of Educ.*, 03-CV-9917 (LAP), 2021 WL 663718, at *6 (S.D.N.Y. February 18, 2021); *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504–05 (S.D.N.Y. 2007).

As in *Abrams*, this is not a situation where the transportation company, which is not even a party to this action, is trying to skirt the rules or fraudulently obtain more money than it had

contracted to receive under the Agreements. *Abrams v. New York City Dept. of Educ.*, 20-CV-5085 (JPO), 2022 WL 523455, at *5 (S.D.N.Y. February 22, 2022). Plaintiffs are merely enforcing their legal rights under the Pendency Orders to have the public pay for their tuition and related services, including specialized transportation. *Abrams v. New York City Dept. of Educ.*, 20-CV-5085 (JPO), 2022 WL 523455, at *5 (S.D.N.Y. February 22, 2022). The Agreements they signed with Sisters require them to pay fees, regardless of whether students use the services. DOE is therefore required to provide transportation services funding as directed under the Pendency Orders. *Abrams v. New York City Dept. of Educ.*, 20-CV-5085 (JPO), 2022 WL 523455, at *5 (S.D.N.Y. February 22, 2022)

The contract between Sisters and Plaintiff families here is not a contract of adhesion, and this Court has upheld the terms of the contract. *See Abrams*, 2022 WL 523455 (requiring DOE to reimburse Parents for its transportation contracts with Sisters, even though "the Agreements plainly provide that payment is required whether the Student uses the services or not unless Sisters is at fault for the Student not utilizing the services.").

A contract of adhesion is one drafted by one party with superior bargaining power and imposed on the other party without any opportunity for negotiation. *See* Black's Law Dictionary (11th ed. 2019). That is not the case here. The contract between Sisters and Plaintiffs' families was a voluntary agreement that both parties entered into freely and knowingly. The contract also allowed the Plaintiffs' families to review and reject the contract before signing it. See *id*. Thus, the contract was not a contract of adhesion, but a valid and enforceable agreement that this Court should respect and uphold.

Finally, for student D.O., the FOFD orders DOE to "fund the cost of tuition (including related services) for placement of Student at the private program for the dates of attendance during

the 2020/21 school year (beginning February 2021) and for the 2021/22 school year. Funding shall include specialized transportation costs." [ECF 65-16]. What DOE omits is that D.O. began attending iBRAIN in February 2021, which falls in the middle of the school year. Given that context, the plain language of the phrase "dates of attendance" means the DOE's obligation to fund D.O.'s tuition and transportation did not encompass the entire 2020-2021 school year, but instead commenced on the date when D.O. began attending iBRAIN. DOE has not made an argument that they need not pay tuition if D.O. did not attend school on any given day. Such an argument would be a bridge too far. If the argument that "dates of attendance" do not apply to tuition, it does not apply to transportation.

The DOE's attempt to use this language to entirely avoid its obligations to fund D.O.'s tuition and transportation is intentionally deceptive and misleading. This approaches the kind of argument that Rule 11 is meant to sanction. "Lawyers are not entitled to ignore controlling, adverse precedent. We expect (and are entitled) better performance by members of the bar." *Jackson v. City of Peoria, Illinois*, 825 F.3d 328, 331 (7th Cir. 2016).

## V.  DOE'S PROPOSED "RUBRIC" FOR REIMBURSEMENT IS INEQUITABLE

In the alternative, the DOE argues that it should be relieved of its obligations under federal law because it is "inequitable" to require it to pay for the contracted transportation services. At the outset, it must be noted that the remedy for an order that one party finds inequitable is not for that party to simply ignore the Order or unilaterally impose ***after-the-fact conditions*** on that Order to make compliance more palatable. As DOE attorneys surely know, the correct action is to go to Court and request a modification of the Order or a stay.

The point is irrelevant because there is nothing inequitable about requiring the DOE to fully reimburse Plaintiffs here for the cost of the subject transportation services. DOE's argument

rests on the notion that it should not have to reimburse contracts that were not actually fulfilled. However, despite DOE's insistence otherwise, the services that Parent-Plaintiffs contracted for were provided. The contract between Plaintiffs and Sisters states that Plaintiffs are responsible for all "FEES…based on SCHOOL DAYS, whether STUDENT used SERVICES or not, unless PROVIDER was at fault for STUDENT not utilizing SERVICES." Thus, the contract is clear that the service the Plaintiffs contract for is an available van to take their disabled children to school daily, not for per-diem rides actually taken. Plaintiffs could not secure a transportation service for their children based on per-diem usage.

There is no allegation that Sisters was at any point unable to provide the "service" for which it was contracted and fulfill its contractual obligations. This Court has already reviewed and approved the standard transportation contract Sisters enters into with the Parent-Plaintiffs. *Abrams* at \*4-\*5. In fact, in that same decision, the Southern District of New York considered and rejected the DOE's "equity" arguments. *Id*. But because the DOE can't (or won't) distinguish *Abrams*, the DOE would prefer this Court ignore prior decisions from other judges in the Southern District of New York.

There is also no evidence that the contract between Sisters and Parent-Plaintiffs is exorbitant, fraudulent or anything but an arm's-length transaction at market rate terms. DOE has not submitted any other contracts for comparable transportation services to show that the terms of the Plaintiffs' contract with Sisters are unusual, exorbitant, or otherwise unreasonable, even though the DOE itself is a party to, and therefore has access to, many such contracts. Obviously, the DOE should not have to pay a fraudulent contract for tuition or transportation services if the subject child does not actually attend a school or use any aspect of the transportation.[5]

---

[5] This is, of course, what the DOE's requirement on its website that parents must submit proof of attendance before being reimbursed for transportation services [ECF No. 49] intends to avoid. Clearly, the requirement that parents

But that is not the case here. There is no proof (or even allegation) that these children are not regularly attending in-person school or utilizing the transportation they contracted for. What is at issue here is the incidental school a child may miss because, for example, that child is sick, or there is a snow day or some other quotidian reason why a child misses school. Is the DOE claiming that if a student misses five days of school because that child tested positive for COVID-19, the DOE need not pay for those five days of school and transportation? In that situation, who should pay? Should the school and bus company simply lose five days of payment? Or should a parent who keeps their child home sick be responsible for reimbursing the school and bus company for the days that child missed school? DOE does not answer these questions, claiming instead that "equity" demands that the parents of a child with disabilities, whom the DOE has failed in the first instance, bear the cost of their child's unplanned school absences.

If DOE is concerned with "equity," it can, at any point, provide its own transportation to these students at its own cost. DOE has never offered to do so because it cannot. Instead, DOE argues that "equity" requires families to sign their own transportation contracts, and then be responsible for payment of that contract when the DOE unilaterally does not approve of the contract or insists on an unreasonable interpretation of the underlying administrative Order to avoid its financial responsibilities under the IDEA.

## VI.  PLAINTIFFS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR

In *R.S. v. New York City Dep't of Educ, et al.*, No. 21-cv-02257, Dkt. No. 22 (JPO) (S.D.N.Y. 2021), this Court found that a ***permanent injunction*** was proper, where DOE failed to make timely payments to implement the Student's final Order. Similar to this case, DOE failed to

---

"submit proof of [their] child's attendance" before they will be reimbursed means that parents have to prove that their child, *in general*, attends the school and uses the transportation for which the DOE is reimbursing. It is illogical to conclude that this requirement means that *every* parent who receives public funds for private school must submit daily attendance records prior to reimbursement.

implement the final Order until a complaint was filed in the Southern District seeking immediate relief after the final Order was not paid within three months. *Id*. at p. 4. At a conference before the Court, DOE conceded its obligation to fund the Student's placement and then indicated it would promptly fund the same. *Id.* Seizing on the Court's gracious "second chance," DOE then remitted a partial payment for the Student's placement. *Id.* In response, the Court issued a ***permanent*** injunction, recognizing that "the enforcement of the pendency provision is automatic and should occur without regard to such factors as irreparable harm[,] likelihood of success on the merits[,] and balancing of the hardships." *Id.*, citing *Abrams v. Carranza*, No. 19-cv-4175 (AJN), 2019 U.S. Dist. LEXIS 95403, at *8 (S.D.N.Y. June 6, 2019).

The *R.S.* Court also found that: "[e]ven if Parents must meet traditional injunction criteria, however, they do so." *Id.* The Court found that because DOE did not contest their obligation, much as here, the Parents showed a likelihood of success on the merits. *Id*. at p. 5. Examining irreparable harm, the Court found that R.S. had depleted her retirement account to fund her child's private school education, but "[o]f greater importance, [the student's] ongoing placement at the Titus School is at increasing risk the longer DOE avoids its contested obligations, which would be an irreparable injury to him." *Id.* The Court also found that "DOE will suffer no hardship by meeting its uncontested past and ongoing obligations" and "the public interest is not disserved by enjoining the DOE to meet its uncontested obligations." *Id.*

In this case, the facts run almost parallel to *R.S.*, but these Parents have not yet depleted their savings and retirement accounts to fund their children's educations. But must they before DOE performs its legal obligations? In this action, DOE has conceded its obligation—to provide these Student-Plaintiffs with a FAPE. That is, after all, the purpose of the pendency placement; the pendency placement serves as a place where the child can be guaranteed an appropriate education

until the dispute over the proposed placement is resolved. If DOE cannot provide an appropriate

placement that is not the contested placement, it **must** fund the Student's appropriate placement.

*Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519 (2d Cir. 2020); *Wagner v. Bd.*

*of Educ. of Montgomery Cnty.*, 335 F.3d 297 (4th Cir. 2003). Yet DOE has not proposed alternative

placements for these children where their IEPs could be implemented. Instead, DOE sits back on

its heels, as they did in *R.S.* And even when the Parents win, DOE ensures the Parent loses; the

Parent is at their mercy—for a final Order is nothing if DOE is allowed to pay through its "natural"

bureaucratic processes. *Mendez v. Banks, et al.* No. 22-2663, Dkt No. 104-1, p. 16 (2d Cir.)

(April 12, 2023) ("Our determination that the statute does not require circumvention of ordinary

payment procedures here comports with the practical realities of bureaucratic administration.") *cf.*

*Nat. Res. Def. Council, Inc. v. U.S. E.P.A.*, 703 F.2d 700, 709 (3d Cir. 1983) (Senator Dole: "There

are vast resources that enforce the arbitrary decisions of autocratic bureaucrats, but there are very

few individuals or small businesses that can afford to fight back. As these rules and regulations

continue to multiply, Americans grow more and more reluctant to contest regulations because of

the astonishing cost of litigation.").

Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C.

§ 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief.

*S.H.W. and W.S.C., individually and on behalf of their minor child, M.C., Plaintiffs, v. NEW YORK*

*CITY DEPARTMENT OF EDUCATION, Def..*, 21 CIV. 4808 (JPC), 2023 WL 2753165, at *4

(S.D.N.Y. March 31, 2023); See *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S.

7, 12 (1993). Plaintiffs request this Court exercise its equitable authority and resolve the Plaintiffs'

motion in their favor. The DOE should not be allowed to engage in such nefarious machinations

to avoid its obligation to provide a FAPE to all children living within NYC. Accordingly, the

Parent-Plaintiffs' motion for summary judgment on transportation funding should be granted, and the DOE's motion for summary judgment should be denied.

## **CONCLUSION**

For the preceding reasons, DOE should not be permitted to continue to shirk its duties under federal law by unilaterally imposing arbitrary conditions on the administrative orders requiring DOE to fund the transportation costs of the Plaintiffs here fully. Accordingly, for the reasons above, Plaintiff's motion for summary judgment should be granted, and Defendants' motion for summary judgment should be denied.

Dated:  April 13, 2023
        New York, New York

Respectfully submitted,

/s/_____
Ashleigh C. Rousseau (5801923)
*Attorneys for the Plaintiff(s)*
Brain Injury Rights Group, Ltd.
300 East 95th Street, Suite 130
New York, New York 10128
ashleigh@pabilaw.org