UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                       :

PATRICK DONOHUE, as Parent and Natural Guardian  :
of S.J.D., and PATRICK DONOHUE, Individually, *et al.*,  :
                                         :

                   Plaintiffs,       :           22 Civ. 8998 (JPC)
                                         :

          -v-                        :          <u>OPINION AND ORDER</u>
                                         :

                                         :

DAVID C. BANKS, in his Official Capacity as       :
Chancellor of the New York City Department of    :
Education, *et al.*,                         :

                 Defendants.     :

------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This action is brought pursuant to the Individuals with Disabilities in Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), a statute ensuring that "all children with disabilities have available to them a free appropriate public education," *id.* § 1400(d)(1)(A). Parents of eighteen students with disabilities bring this action—individually and on behalf of their children—against Defendants David C. Banks, in his official capacity as Chancellor of the New York City Department of Education, the New York City Department of Education (the "DOE"), and Brad Lander, in his official capacity as Comptroller of the City of New York. Plaintiffs seek immediate funding for the costs of tuition and related services for their children to attend a private school called the International Institute for the Brain and more commonly referred to as "iBrain" for the 2022-2023 school year. With disputes as to only nine students remaining at this stage, Plaintiffs and Defendants have each moved for summary judgment.

Defendants agree that these students are entitled to pendency at iBrain pursuant to the IDEA and that, pursuant to the students' respective interim and final administrative orders, the DOE is responsible for funding their 2022-2023 tuition and related services.  But they dispute the scope of the DOE's reimbursement obligations for those students' transportation services.  The resolution to that dispute turns on the precise language in each student's administrative order.

As discussed below, certain of these orders are clear on their face.  Some expressly require the DOE to fund transportation services pursuant to the school's transportation contract or to fund *any* transportation costs broadly, and for students with those orders, summary judgment is granted in favor of the corresponding Plaintiffs.  Others require the DOE to fund transportation only for days that the transportation services were "actually provided," services for the "actual number of days" the student "was transported," or services "for the dates of attendance."  For students with those orders, summary judgment is granted in favor of the DOE, and the corresponding Plaintiffs are directed to submit documentation reflecting the students' days of attendance to the DOE so that it can process the required reimbursements.  Lastly, for those students with orders that obligate the DOE to provide transportation services "to and from" school, the Court remands to the appropriate administrative officer for further proceedings consistent with this Opinion and Order.

## I.  Background

### A.     Overview of the IDEA

Congress enacted the IDEA with the purpose of "ensur[ing] that all children with disabilities have available to them a free appropriate public education ['FAPE'] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A).  To achieve this end, the IDEA requires state or local education agencies to provide each student with a

disability an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." *Doe v. East Lyme Bd. of Educ.*, 790 F.3d 440, 448 (2d Cir. 2015) (quoting *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985)).  These "related services" include, as relevant here, "transportation . . . as may be required to assist a child with a disability to benefit from special education."  20 U.S.C. § 1401(26)(A).

"Congress repeatedly emphasized throughout the Act the importance and indeed the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness."   *Honig v. Doe*, 484 U.S. 305, 311 (1988) (citing 20 U.S.C. §§ 1400(c), 1401(19), 1412(7), 1415(b)(1)(A), (C), (D), (E), and 1415(b)(2)).  States must thus allow parents "to seek review of any decisions they think inappropriate."  *Id.* at 312; *see* 20 U.S.C. § 1415(a) (requiring state education agencies to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a [FAPE]").  In New York, parents may challenge the adequacy of their child's IEP in a due process hearing before an impartial hearing officer ("IHO"). N.Y. Educ. Law § 4404(1).  If dissatisfied with the IHO's decision, either party may appeal that decision to a state review officer ("SRO"), whose decision "is final, and concludes the state administrative review."  *Id.* § 4404(2).  And if still dissatisfied at that juncture, either party may then bring a civil action in federal or state court.  20 U.S.C. § 1415(a)(i)(2)(A).

Given the often-protracted nature of these review proceedings, parents need not necessarily wait until their conclusion before seeking a more suitable educational placement for their child. Before or during the pendency of these proceedings, parents may unilaterally (that is, without the consent of state or local school officials) place their child in a private school—but they "do so at

their own financial risk." *Sch. Comm. of Town of Burlington, Mass.*, 471 U.S. at 374.  Only if they ultimately prevail in the review proceedings (*i.e.*, if the administrative officer finds that the DOE had failed to provide the child with a FAPE and deems the parent's unilateral placement appropriate) may they be permitted to seek retroactive recovery of tuition expenses arising from that unilateral placement.  *Id.*; *see also East Lyme Bd. of Educ.*, 790 F.3d at 454 ("[W]hen a parent rejects a stay-put placement by unilaterally placing the child elsewhere, retroactive reimbursement for the unilateral placement is available, if at all, only through a FAPE claim.").

The parents' entitlement to reimbursement during the review process is governed by the IDEA's "pendency" or "stay-put" provision, which requires that "during the pendency of any proceedings conducted pursuant to this section . . . the child shall remain in the then-current educational placement of the child."  *Id.*   Under the Second Circuit's interpretation of this provision, "a child is entitled to remain in his or her placement at public expense during the pendency of an IEP dispute," and that entitlement continues "until the relevant administrative and judicial proceedings are complete."  *Ventura de Paulino v. N.Y.C. Dep't of Educ.*, 959 F.3d 519, 531 (2d Cir. 2020).  Pendency disputes "generally focus[] on identifying the child's 'then-current educational placement,' as it is the only educational program the school district is obligated to pay for during" pendency.  *Id.* at 532 (quoting 20 U.S.C. § 1415(j)).

The phrase "then-current educational placement" typically refers to a child's last education program *agreed upon* by the school and parent before the parent requested a due process hearing.  *Id*.  But where a parent's unilateral placement is ratified in a subsequent administrative or judicial proceeding, that unilateral placement is considered the "then-current educational placement."  *Bd. of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 485 (2d Cir. 2002) (holding that "a final administrative decision by a state review board, agreeing with a parent's decision about their

4

child's placement, constitutes a 'placement' within the meaning of the pendent placement provision of the IDEA"). The IHO then delineates the scope of the DOE's reimbursement obligations pursuant to the IDEA's stay-put provision either in a pendency order—where the impartial hearing is otherwise still pending—or a Finding of Facts and Decision ("FOFD")— where the impartial hearing has concluded. *See Abrams v. Carranza*, No. 19 Civ. 4175 (AJN), 2019 WL 2385561, at *1 (S.D.N.Y. June 6, 2019) (explaining that "an IHO may hold a hearing and issue an Interim Order on Pendency ('IOP') making findings concerning a student's pendency placement in advance of making final findings of fact and decision on her due process complaint"). "[T]he existence and extent of the DOE's reimbursement obligations turn on the language of the applicable administrative order—in particular, on the most recent, operative order, also known as the 'last pendency-setting event.'" *Davis v. Banks*, No. 22 Civ. 8184 (JMF), 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) (quoting *Araujo v. New York Dep't of Educ.*, 20 Civ. 7032 (LGS), 2023 WL 5097982, at *5 (S.D.N.Y. Aug. 9, 2023)).

"[G]iven the time-sensitive nature of the IDEA's stay-put provision, an immediate appeal is necessary to give realistic protection to the claimed right." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 199 (2d Cir. 2002) (internal quotation marks omitted). Accordingly, a parent seeking review of an IHO's pendency determination need not exhaust administrative remedies (by appealing the order to an SRO) before seeking judicial review. *See id.* ("Congress specified that exhaustion is not necessary if (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies."); *see also id.* ("We need not decide whether the exhaustion requirement is generally applicable to all claims arising under the IDEA because assuming

*arguendo* that it is, an action alleging violation of the stay-put provision falls within one, if not more, of the enumerated exceptions to this jurisdictional prerequisite.").

B.      **Plaintiffs' State Administrative Proceedings[1]**

In 2022, the eighteen Plaintiffs in this lawsuit, dissatisfied with the educational services provided in their children's respective DOE schools, availed themselves of the above-described procedural safeguards.  First, they unilaterally enrolled their children in iBrain, and, in connection with that enrollment, contracted for special transportation services with Sisters Travel and Transportation Services, LLC ("Sisters"), which charges a monthly flat rate for transportation services without regard for whether the student utilizes such services on any given day.  Pls. Br. at 8-9.[2]  Next, they requested an impartial hearing, filing due process claims and alleging therein (1)

---

[1] The following facts are primarily drawn from the parties' statements of material facts pursuant to Local Civil Rule 56.1, Dkts. 47, 66 ("Defts. Counter 56.1 Stmt."), 67, 74 ("Pls. Counter 56.1 Stmt.), and the declarations (including the exhibits attached thereto) filed by the parties.  *See* Dkts. 49, 65 ("3/22/23 Dainow Decl."), 79.  Unless otherwise noted, the Court cites only to a party's counter-Rule 56.1 statement when the parties do not dispute the fact, the adverse party has offered no admissible evidence to refute that fact, or the adverse party simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.  Moreover, the Court relies on Plaintiffs' summary judgment brief, Dkt. 50 ("Pls. Br."), for relevant context on Plaintiffs' unilateral placement decisions and transportation contracts—facts that Defendants do not challenge in their opposition brief and which are, in any event, immaterial to the Court's decisions herein—before detailing the administrative orders at issue in this case.

[2] According to Plaintiffs, each transportation contract provides, in relevant part:

The PARTIES agree that each AM TRIP and PM TRIP will be billed as a flat rate of $XXX.00 ($XXX.00 for vehicle and driver + $XX.00 for transportation paraprofessional), hereinafter referred to as "FEES."  PROVIDER will bill for FEES on a monthly basis.

CLIENT understands and accepts FEES will be based on SCHOOL DAYS, whether STUDENT used SERVICES or not, unless PROVIDER was at fault for STUDENT not utilizing SERVICES.  All of the FEES described above are considered "PROVIDED SERVICES."  CLIENT warrants STUDENT will be enrolled in SCHOOL for the TERM and obligation to pay FEES is unconditional and cannot be apportioned or mitigated, except as explained above.  PROVIDER

that the DOE had denied their respective children a FAPE for the 2022-2023 school year, (2) that

unilateral placement at iBrain was appropriate, and (3) that equitable considerations favored full

reimbursement for each child's education program at iBrain, including transportation and nursing

services as appropriate.  *Id.* at 8.  In each case, the IHO concluded either in an interim pendency

order or an FOFD that the DOE had denied the child of a FAPE, and that unilateral placement at

iBrain was appropriate, thereby entitling each student "to remain in his or her placement at public

expense," *Ventura*, 959 F.3d at 531.  *See, e.g.*, 3/22/23 Dainow Decl., Exh. C at 16 (September 10,

2021 FOFD for M.B. finding that the DOE failed to provide the student a FAPE and that unilateral

placement at iBrain was appropriate); *id.*, Exh. H at 1 (September 27, 2022 pendency order for

M.C. finding the same); *id.*, Exh. AA at 3 (July 16, 2022 FOFD for R.N. finding the same).

    As discussed, the parties agree that the students were entitled to pendency at iBrain, and

that the DOE is thus obligated to reimburse these students' transportation costs related to that

placement during the 2022-2023 school year.  Dkt. 68 ("Defts. SJ & Opp. Br.") at 11-13.  The

parties' remaining dispute concerns the scope of the DOE's reimbursement obligations for the

transportation costs for the nine children still at issue in this case.  The relevant administrative

orders for those children are detailed below.[3]

---

will not take any deductions, omissions, or refunds for unexcused absences,
withdrawal, suspension, or for any other reason except as outlined in Section 7.

Pls. Br. at 9.

    [3] In their briefing, the parties discuss administrative orders for a student identified as
A.J.C.B.  *See* Defts. SJ & Opp. Br. at 9, 15; Dkt. 75 ("Pls. Opp. & Reply") at 12.  But A.J.C.B.
does not appear to be a student-plaintiff in this case.  *See generally* Dkt. 6 ("Compl.") (no mention
of A.J.C.B. or parent/natural guardian of A.J.C.B.).  Accordingly, the Court disregards arguments
as to that student.  Moreover, although Plaintiffs had initially sought reimbursement for nursing
services for Y.N., "upon further review of the underlying administrative orders," they subsequently
withdrew that argument in their Opposition and Reply.  Pls. Opp. & Reply at 12 n.4.

1. **M.B.**

Plaintiff Marilyn Beckford is the parent and natural guardian of M.B.  Defts. Counter 56.1 Stmt. ¶ 4.  On September 10, 2021, IHO Sebastian Weiss issued an FOFD, which ordered, *inter alia*, that "the District shall pay for the [M.B.]'s transportation services to iBrain for the 2020-21 school year, provided that the transportation company provides an itemization of transportation services actually provided to [M.B.]."  3/22/23 Dainow Decl., Exh. C at 16; *see* Pls. Counter 56.1 Stmt. ¶ 4.  Because it was not appealed, this FOFD formed the basis of M.B.'s entitlement to reimbursement for services from July 6, 2022, until July 18, 2022, by virtue of pendency.  Pls. Counter 56.1 Stmt. ¶ 3.

On July 18, 2022, IHO Weiss issued an FOFD, which ordered, *inter alia*, that "the District shall pay for [M.B.]'s transportation services for the [2021-2022] School Year pursuant to the Transportation Contract.   The Transportation Company shall provide an itemization of transportation services provided pursuant to the Transportation Contract."  3/22/23 Dainow Decl., Exh. A at 28; *see* Pls. Counter 56.1 Stmt. ¶ 2.  This July 18, 2022 FOFD established M.B.'s entitlement to transportation services for the 2022-2023 school year by virtue of pendency.  Pls. Counter 56.1 Stmt. ¶ 1.

2. **J.B.**

Plaintiff Donna Cornett is the parent and natural guardian of J.B.  Defts. Counter 56.1 Stmt. ¶ 5.  On May 29, 2021, IHO John Farago issued an FOFD, which ordered, *inter alia*, "that the district directly fund the costs of transportation of [J.B.] during the 2019-2020 and 2020-2021 school years at a fair market rate based on comparable transportation, from a comparable vehicle with comparable accommodations for transportation services to and from the private program that were actually provided."  3/22/23 Dainow Decl., Exh. F at 60; *see* Pls. Counter 56.1 Stmt. ¶ 7.

That FOFD, which the DOE did not appeal, established J.B.'s ongoing entitlement to transportation services by virtue of pendency.  Pls. Counter 56.1 Stmt. ¶ 6.[4]

### 3.  M.C.

Plaintiff Linda Larach-Cohen is the parent and natural guardian of M.C.  Defts. Counter 56.1 Stmt. ¶ 8.  On November 1, 2021, IHO Martin J. Kehoe issued an FOFD, which ordered, *inter alia*, "the District to reimburse [M.C.]'s Parents and/or directly pay the Private School for tuition at the Private School for the 2021-2022 [extended school year] in addition to any transportation costs upon presentation of invoices for same."  3/22/23 Dainow Decl., Exh. I at 14; *see* Pls. 56.1 Stmt. ¶ 11.  Since IHO Kehoe's November 1, 2021 FOFD was not appealed, a pendency order was issued on September 27, 2022 based on that FOFD.  3/22/23 Dainlow Decl., Exh. H; Pls. Counter 56.1 Stmt. ¶¶ 9-10.  On February 17, 2023, IHO Robert Rodriguez issued an FOFD in connection with the extended 2022-2023 school year, which ordered, *inter alia*, that the DOE "pay any transportation costs related to transporting [M.C.] to and from iB[rain]."  3/22/23 Dainlow Decl., Exh. G at 19; *see* Pls. Counter 56.1 Stmt. ¶ 13.

### 4.  Z.C.

Plaintiff Crysal Crosley is the parent and natural guardian of Z.C.  Defts. Counter 56.1 Stmt. ¶ 9.  On June 29, 2022, IHO Suzanne M. Carter issued an FOFD, which ordered, *inter alia*, that the "DOE shall pay for special education transportation at [the] New York state Medicaid rate

---

[4] In their summary judgment brief, Plaintiffs attach "SRO Decision No. 22-138 dated January 5, 2023, relative to the Student J.B.," wherein the SRO expressly rejected the DOE's arguments as to its reimbursement obligations for transportation services.  Pls. Br. at 24-25.  Defendants note, however, that the SRO's decision "is irrelevant as that order was not an appeal of IHO Case No. 185117 (which is the controlling order at this juncture) and thus has no bearing on the instant case."  Defts. SJ & Opp. Br. at 15 n.12.  Plaintiffs do not dispute this contention in their Reply.  *See generally* Pls. Opp. & Reply Br.  Nor do Plaintiffs dispute that the May 29, 2021 FOFD establishes J.B.'s entitlement to pendency in the instant matter.  Pls. Counter 56.1 Stmt. ¶ 6.  Accordingly, the Court considers only the May 29, 2021 FOFD with respect to J.B.

for comparable transportation services for the actual number of days from April 2021 to June 2022 [that Z.C.] was transported as supported by certified contemporaneous billing records." 3/22/23 Dainow Decl., Exh. K at 20; Pls. Counter 56.1 Stmt. ¶ 15.  IHO Carter's June 29, 2022 FOFD was not appealed, and so, by virtue of pendency, Z.C.'s entitlement to transportation services is based on that FOFD, which is codified in a September 8, 2022 pendency form.  3/22/23 Dainow Decl., Exh. J; Pls. Counter 56.1 Stmt. ¶¶ 14, 16.

### 5. A.D.

Carolyn Mason is the parent and natural guardian of A.D.  Defts. Counter 56.1 Stmt. ¶ 10. On September 26, 2022, IHO Karen Charrington issued a pendency order, which mandated, *inter alia*, that "pending resolution of this hearing, and retroactive to July 6, 2022 (the date of the filing of the due process complaint), the DOE shall fund [A.D.]'s tuition at the International Academy for the Brain (iBRAIN), door-to-door special transportation to and from [A.D.]'s home and iBRAIN." 3/22/23 Dainow Decl., Exh. L at 2; *see* Pls. Counter 56.1 Stmt. ¶¶ 17-18.  A.D.'s pendency is based on IHO Charrington's September 26, 2022 Order.  Pls. Counter 56.1 Stmt. ¶ 17.

### 6. O.F.

Neysha Cruz is the parent and natural guardian of O.F.  Defts. Counter 56.1 Stmt. ¶ 11.  On October 28, 2022, IHO Mohammad Ezzati issued a pendency order, which ordered, *inter alia*, "that the DOE shall fund transportation for [O.F.] to and from The International Institute for the Brain for the duration of pendency in this matter." 3/22/23 Dainow Decl., Exh. N at 5; *see* Pls. Counter 56.1 Stmt. ¶ 20.  On February 13, 2023, IHO Ezzati issued an FOFD, which did not contain any directives to DOE to fund O.F.'s transportation costs.  3/22/23 Dainow Decl., Exh. M; *see* Pls. Counter 56.1 Stmt. ¶ 22.  O.F.'s parent has served a Notice of Intent to Seek Review of

IHO Ezzati's February 13, 2023 FOFD.  Pls. Counter 56.1 Stmt. ¶ 24.  Accordingly, O.F.'s pendency is based on IHO Ezzati's October 28, 2022 Order.  *Id.* ¶ 19.

### 7.  D.O.

Jumoke Ogunleye is the parent and natural guardian of D.O.  Defts. Counter 56.1 Stmt. ¶ 15.  On December 23, 2021, IHO Helene Peyser issued an FOFD, which ordered that the "District shall fund the cost of tuition (including related services) for placement of [D.O.] at the private program for the dates of attendance during the 2020/21 school year (beginning February 2021) and for the 2021/22 school year.  Funding shall include specialized transportation costs."  3/22/23 Dainow Decl., Exh. P at 9; *see* Pls. 56.1 Stmt. ¶ 26.  IHO Peyser's December 23, 2021 FOFD was not appealed, and so D.O.'s entitlement, by virtue of pendency, to transportation services is based on that FOFD, which is codified in an August 23, 2022 pendency form.  3/22/23 Dainow Decl., Exh. O; Pls. Counter 56.1 Stmt. ¶¶ 25, 27.

### 8.  S.J.D.

Patrick Donohue is the parent and natural guardian of S.J.D.  Defts. Counter 56.1 Stmt. ¶ 1.  On May 22, 2021, IHO Farago issued an FOFD, which ordered, *inter alia*, "that the District directly fund the costs of transportation of [S.J.D.] actually provided at a rate not to exceed the rate payable under Medicaid for [S.J.D.]'s 2019-2020 school year."  3/22/23 Dainow Decl., Exh. S at 53; *see* Pls. Counter 56.1 Stmt. ¶ 30.  On November 7, 2022, IHO Farago issued an FOFD, which stated, *inter alia*, "that the district directly fund the costs of transportation of [S.J.D.] during the 2021-2022 and 2022-2023 school years at a fair market rate based on comparable transportation, from a comparable vehicle with comparable accommodations for transportation services to and from the private program that were actually provided (if the district has funded the cost of transportation provided by the provider utilized here for any student during the preceding twelve

months, utilizing substantially similar equipment and supports, the rate actually paid would constitute one possible basis for defining the fair market rate)." 3/22/23 Dainow Decl., Exh. Q at 10; *see* Pls. 56.1 Counter Stmt. ¶ 33. S.J.D.'s pendency is reflected in a pendency form dated October 4, 2021. Pls. Counter 56.1 Stmt. ¶ 28; *see* 3/22/23 Dainow Decl., Exh. R.

### 9. R.N.

Svetlana Khanimova is the parent and guardian of R.N. Defts. Counter 56.1 Stmt. ¶ 14. On July 16, 2022, IHO Steven P. Forbes issued an FOFD, which ordered, *inter alia*, the DOE "to fund the cost of [R.N.]'s transportation to and from iBRAIN during the 2021-2022 school year in accordance with the contract entered into by the Parent." 3/22/23 Dainow Decl., Exh. AA at 18; *see* Pls. Counter 56.1 Stmt. ¶ 46. IHO Forbes's July 16, 2022 FOFD was not appealed, and so R.N.'s pendency is reflected in that FOFD and also was codified in a pendency form dated September 21, 2022. Pls. Counter 56.1 Stmt. ¶¶ 44, 46; *see* 3/22/23 Dainow Decl., Exh. Z.

## C.    Procedural History

On October 24, 2022, Plaintiffs initiated this putative class action, seeking, among other things, immediate funding from the DOE for the costs of tuition and related services arising from the eighteen students' attendance at iBrain for the 2022-2023 school year. Compl. ¶¶ 622, 668(b). The next day, Plaintiffs moved for a preliminary injunction ordering the DOE "to implement and maintain each Plaintiff's Pendency Placement without further delay." Dkt. 15 at 1.

On October 31, 2022, the Court held a telephonic conference, at which it stayed the briefing schedule for Plaintiffs' preliminary injunction motion and ordered the parties to meet and confer to resolve and/or narrow the issues in the case. *See* Dkt. 25 at 30:16-33:7. On November 30, 2022, Defendants submitted a status update, in which they listed the current payment status for each student, represented that transportation payments were still on hold as to certain students whose

12

administrative orders required Plaintiffs to provide records of in-person physical attendance at iBrain, and requested another status conference before the Court.  Dkt. 28.  The next day, Plaintiffs submitted a separate update, requesting an expedited briefing schedule on the DOE's position on transportation reimbursements.  Dkt. 29.

On December 8, 2022, the Court held an in-person conference, at which the parties clarified that, among other issues, the parties continued to dispute the scope of DOE's reimbursement obligation for transportation services as to certain students.  Dkt. 35 at 17:3-24:23.  The Court denied Plaintiffs' preliminary injunction motion without prejudice—pursuant to Plaintiffs' request—and ordered the parties to submit a joint status letter to further clarify and/or narrow the scope of the remaining issues, as well as to propose a briefing schedule for summary judgment motions.  *Id.* at 41:4-42:20.  On February 1, 2023, Plaintiffs moved for summary judgment, Dkts. 48-50, and on March 22, 2023, Defendants cross-moved for summary judgment, Dkts. 64-68.  On April 13, 2023, Plaintiffs filed their reply and opposition to Defendants' motion, Dkt. 75, and Defendants did the same two weeks later, Dkt. 78.  In those submissions, the parties narrowed the issues to reimbursements for transportation costs for the nine students discussed above.

## II.  Legal Standard

In IDEA cases, the usual summary judgment standards do not apply.  *See, e.g.*, *T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist.*, 554 F.3d 247, 252 (2d Cir. 2009) (per curiam); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377-78 (S.D.N.Y. 2006).  Instead, summary judgment in IDEA cases is "in substance an appeal from an administrative determination, not a summary judgment."  *See Arlington Cent. Sch. Dist. v. D.K. & C.K.*, No. 02 Civ. 2117 (DLC), 2002 WL 31521158, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir. 1995)); *accord Lillbask ex rel. Mauclaire v. Conn. Dep't*

*of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005).  When reviewing IDEA administrative decisions, a federal district court considers the record and any additional evidence the parties submit and bases its determination on a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C); *T.P.*, 554 F.3d at 252.  Because the IDEA authorizes "such relief as the court determines is appropriate," 20 U.S.C. § 1415(i)(2)(C)(iii), district courts exercise "equitable authority" when crafting appropriate relief.  *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 12 (1993).

Courts do not, however, have free reign in such actions.  "The role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed," and "courts must bear in mind the statutory context and the administrative judges' greater institutional competence in matters of educational policy."  *R.E. ex rel. J.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012) (internal quotation marks and brackets omitted).  The court "must give due weight to [the administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy."  *M.H. ex rel. P.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 240 (2d Cir. 2012) (internal quotations marks omitted).  As the Second Circuit has explained, judicial review of state agency proceedings under the IDEA falls between two well-known standards of review, "requir[ing] a more critical appraisal of the agency determination than clear-error review" but "fall[ing] well short of complete *de novo* review."  *C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 77 (2d Cir. 2014) (internal quotation marks omitted).

"In deciding what weight is due . . . the analysis often will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive," such as the "quality and thoroughness of the reasoning, the type of determination under review, and whether the decision is based on the administrative body's familiarity with the evidence and the

witnesses." *Reyes ex rel. R.P. v. N.Y.C. Dep't of Educ.*, 760 F.3d 211, 218 (2d Cir. 2014) (internal quotation marks omitted).  And in the event the Court requires further clarification or lacks sufficient guidance from the administrative body, the Court may appropriately remand the matter "to obtain the necessary educational expertise of the IHO."  *T.L. v. N.Y.C. Dep't of Educ.*, 938 F. Supp. 2d 417, 436 (E.D.N.Y. 2013).

### III.  Discussion

As discussed, the IDEA requires state and local education agencies to provide students with disabilities with special education and "related services," including "transportation . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(26)(A).  The statute otherwise provides no guidance on the precise contours of the state or local education agency's obligations to fund transportation services.  Accordingly, where, as here, the IHO has issued an interim pendency order and/or an FOFD ordering such reimbursement, "the sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order."  *Davis*, 2023 WL 5917659, at *4; *see also Ventura de Paulino*, 959 F.3d at 532 (observing that the DOE's "legal responsibility to pay" arose from the final unappealed administrative order); *Mendez v. Banks*, 65 F.4th 56, 61 (2d Cir. 2023) (determining the DOE's obligations based on the underlying pendency orders).

The parties' arguments, however, are largely divorced from the language of the orders. Plaintiffs adopt the blanket position that the DOE must reimburse all Plaintiffs for any costs of transportation services regardless of whether the student utilized such services simply because that is how Plaintiffs' transportation contracts with Sisters are set out.  Pls. Br. at 13 ("Here, each Parent must pay for transportation based on the number of school days per month and whether the Student steps foot on the bus.  Here, Plaintiffs cannot contract for transportation services paid for when

15

rides are 'actually used.'").  But because the DOE is not a party to Plaintiff-Parents' contracts with Sisters, the Court lacks any basis to bind the DOE to those contractual terms.

The case law on which Plaintiffs purport to rely provides no support for their sweeping interpretation.  In *Abrams v. New York City Department of Education*, it is true that the court ordered the DOE to reimburse the plaintiffs for the full costs of transportation services based on the plaintiffs' contracts with Sisters.  No. 20 Civ. 5085 (JPO), 2022 WL 523455, at *5 (S.D.N.Y. Feb. 22, 2022).  But, critically, the court had taken its cue from the language of the pendency orders at issue—all of which required that the DOE reimburse such transportation services costs *without any restriction* except for "the length of travel time for the services."  *Id.* at *4 (citing subject pendency orders as "requiring that the student shall attend iBRAIN and receive the following instruction and related services at public expense, including specialized transportation . . . limited time travel not to exceed sixty (60) minutes" (internal quotation marks and brackets omitted)).  Here, Plaintiffs do not—and indeed could not—tether their proffered interpretation to the precise language of the subject administrative orders, which vary from student to student and thus impose different obligations on the DOE as to each student.

In *L.V. v. New York City Department of Education*, the Court ordered the DOE to comply with the plaintiff-children's "administrative orders requiring [the] DOE to pay for all or part of their private-school tuition."  No 03 Civ. 9917 (LAP), 2021 WL 663718, at *1 (S.D.N.Y. Feb. 18, 2021).  There, the DOE—faced with the novel circumstances arising out of the early years of the coronavirus pandemic—simply refused to reimburse tuition for private schools whose remote learning plans the DOE had not approved, even though the administrative body had imposed no such requirement.  *Id.*  The court held that the "DOE's only lawful course of action is to implement those Orders, full stop[,]" and "[b]y its own admission, DOE ha[d] not done that."  *Id.* at *8.  To

16

the extent that Plaintiffs rely on *L.V.* to urge that the DOE must comply with the administrative

orders as written, the Court agrees.  But *L.V.* otherwise has no bearing on the scope of the DOE's

obligations as to the orders at issue in *this* case.[5]

On the other hand, Defendants—in urging the Court to limit the DOE's reimbursement

obligations to transportations services *actually provided* to the student—outwardly offer

interpretations of the administrative orders themselves.  *See* Defts. SJ & Opp. Br. at 13 ("Where

those orders specify that DOE is required to fund transportation costs for services that were

actually provided or specify that payment shall be for transportation to and from the school, such

payment is plainly contingent on DOE's receipt of some documentation—invoices and in-person

attendance records—showing that the transportation services were, in fact, actually utilized and

when.").  But, as further described below, in certain students' cases the DOE's proffered

interpretation reaches too far and requires the Court to read in words that are plainly absent from

the relevant orders.

Accordingly, to the extent the parties request that the Court deviate from the plain language

of the administrative orders, the Court declines.  And, as noted at the outset, the Court bases the

appropriate relief on the precise language of each administrative order.

## A.    Students Whose Orders Require Reimbursement Pursuant to the Transportation Contract or Any Transportation Costs

For certain students, their relevant orders make clear that the DOE is obligated to pay

transportation costs as provided in the transportation contract between the school and the

---

[5] Plaintiffs also alerted the Court to an SRO decision in an appeal that appears unrelated to the administrative orders for any of the students in the case, *see* Dkt. 82, and likewise has no bearing on the instant dispute.

transportation agency.  These students are R.N., M.B. (for costs starting on July 18, 2022), and M.C.

The July 16, 2022 FOFD for R.N. requires the DOE "to fund the cost of [R.N.]'s transportation to and from iBRAIN during the 2021-2022 school year *in accordance with the contract* entered into by the Parent."  3/22/23 Dainow Decl., Exh. AA at 18 (emphasis added); *see* Pls. Counter 56.1 Stmt. ¶ 46.  The DOE insists that its "obligation to fund transportation services [pursuant to R.N.'s FOFD] *is based on actual, in-person attendance at iBrain* in conjunction with the contract" between the parent and Sisters.  *See* Defts. SJ & Opp. Br. at 17 (emphasis added). But the order itself lacks any reference to in-person attendance, and the Court thus holds that the DOE is obligated to reimburse R.N.'s transportation costs as provided in the transportation contract with Sisters.

The July 18, 2022 FOFD for M.B., which provides the basis of M.D.'s pendency starting on July 18, 2022, Pls. Counter 56.1 Stmt. ¶¶ 1, 3, similarly requires the DOE to pay for M.D.'s transportation services "pursuant to the Transportation Contract," and further orders that "the Transportation Company shall provide an itemization of transportation services provided pursuant to the Transportation Contract."  3/22/23 Dainow Decl., Exh. A at 28; Pls. Counter 56.1 Stmt. ¶ 2. The DOE argues that the term "itemization" somehow transforms the DOE's obligation to cover only "transportation services actually used" by the child on any given day.  Defts. SJ & Opp. Br. at 17.  Once again, the Court refuses to read words into the order, and instead gives effect to the repeated reference to reimbursement for services "pursuant to the Transportation Contract" itself.

Finally, both the pendency order and FOFD for M.C. include broad language requiring the DOE to pay for "*any* transportation costs."  Specifically, the September 27, 2022 pendency order requires the DOE to "directly pay . . . *any* transportation costs upon presentation of invoices for

[the] same." 3/22/23 Dainow Decl., Exh. I at 14 (emphasis added); *see* Pls. Counter 56.1 Stmt. ¶ 11.  The February 17, 2023 FOFD issued in connection with the 2022-2023 school year ordered the DOE to "pay *any* transportation costs related to transporting [M.C.] to and from iBrain." 3/22/23 Dainow Decl., Exh. G at 19 (emphasis added); *see* Pls. Counter 56.1 Stmt. ¶ 13.  The parties dispute whether the FOFD supersedes the pendency order as to the DOE's reimbursement obligations for M.C.'s 2022-2023 school year.  *See* Pls. Counter 56.1 Stmt. ¶ 12 (Defendants asserting that the February 17, 2023 FOFD supersedes the prior pendency order and Plaintiffs countering that M.C.'s pendency "remains based on the November 01, 2021 FOFD," on which the September 27, 2022 pendency order was based).  The Court need not resolve that dispute because, under the terms of either order, the DOE is plainly required to reimburse the student/parent for any transportation-related costs, which, in this case, arise from the parent's contract with the transportation services company. [6]

The Court thus finds that for R.N., M.B. (for costs starting on July 18, 2022), and M.C., the DOE is obligated to pay the full amount of the transportation contract for the period that the order covered, regardless of whether the student attended school those days.  Accordingly, as to these students, Plaintiffs' motion for summary judgment is granted, and the Defendants' motion for summary judgment is denied.  Plaintiffs shall submit to the DOE paperwork reflecting the terms of the relevant transportation contract so that the DOE can process the reimbursements for MB., M.C., and R.N. consistent with this Opinion and Order.

---

[6] The Court's determination that M.C.'s February 17, 2023 FOFD plainly requires the DOE to reimburse costs as provided in the transportation contract is not inconsistent with the Court's finding below, *see infra* III.C, as to the ambiguity of orders mandating reimbursements for transportation costs "to and from iBrain."  The February 17, 2023 FOFD's mandate is, on its face, far broader in scope, as it requires the DOE to pay *any* costs that are *related* to transporting M.C. to and from iBrain.  The administrative orders described in III.C lack such expansive language.

**B.      Students Whose Orders Require Transportation Reimbursement Only for School Days Attended or Services "Actually Provided"**

Conversely, for several of the students at issue in this case, the relevant pendency orders are clear that the DOE is required to fund transportation only for days the child actually utilized the transportation services and attended school.  Those students are M.B. (for the brief period between July 6, 2022, to July 18, 2022), J.B., S.J.D., Z.C., and D.O.

The orders for M.B. (for the period between July 6, 2022, to July 18, 2022), J.B., and S.J.D. require the DOE to pay for transportations of services "actually provided" to the student.  *See* 3/22/23 Dainow Decl., Exh. C at 16 (September 10, 2021 pendency order/ FOFD for M.B. ordering that "the District shall pay for [M.B.]'s transportation services . . . provided that the transportation company provides an itemization of transportation services *actually provided* to [M.B.]" (emphasis added)); *id.*, Exh. F at 60 (May 29, 2021 FOFD for J.B. ordering "that the district directly fund the costs of transportation of [J.B.] . . . for transportation services to and from the private program that were *actually provided*" (emphasis added)); *id.*, Exh. Q at 10 ("November 7, 2022 FOFD ordering "that the district directly fund the costs of transportation of [S.J.D.] . . . for transportations services to and from the private program that were *actually provided*" (emphasis added)).[7]  As a number of other judges in this District have found (in similar litigation involving students' unilateral iBrain enrollments and transportation contracts with Sisters), the phrase "actually provided" makes clear

---

[7] Plaintiffs dispute that the November 7, 2022 FOFD controls the DOE's reimbursement obligations for S.J.D.'s educational services for the 2022-2023 school year, and contend that S.J.D.'s pendency for that time is based on earlier orders.  *See* Pls. Counter 56.1 Stmt. ¶ 32 ("Plaintiffs affirmatively state that while the decision in IH No. 210867 [the November 7, 2022 FOFD] would be the basis of pendency for S.J.D.'s 2023-2024 school year, the basis of her pendency for the 2022-2023 school year remains based on [prior orders].").  But the November 7, 2022 FOFD explicitly orders the DOE to fund S.J.D.'s costs for the 2022-2023 school year "pursuant to pendency."  3/22/23 Dainow Decl., Exh. Q at 10.  The Court thus rejects Plaintiffs' argument, for which they provide no legal support, and instead adheres to the plain language of the November 7, 2022 FOFD.

that the DOE's reimbursement obligation is restricted to services provided on the days the child attended school.  *See Araujo*, 2023 WL 5097982, at *2, 5 (finding that the FOFD directing the DOE to fund the costs of the student's "transportation services to and from the private program that were actually provided to the student" required the plaintiffs to "provide evidence that [the student] physically traveled to and/or from iBRAIN via an approved transportation service in order to seek reimbursement"); *Davis*, 2023 WL 5917659, at *3 (explaining that the plaintiffs' interpretation that "services . . . actually provided" does not refer to rides actually taken "strains the relevant language beyond its breaking point and renders the phrase 'actually provided' superfluous").

The FOFD for Z.C. orders the DOE to "pay for special education transportation . . . for comparable transportation services *for the actual numbers of days from April 2021 to June 2022 [that Z.C.] was transported*."  3/22/23 Dainow Decl., Exh. K at 20 (emphasis added).  And the FOFD for D.O. orders the District to "fund the cost of tuition (including related services) for placement of [D.O.] at the private program *for the dates of attendance* during the 2020/21 school year," adding that such "[f]unding shall include specialized transportation costs."  3/22/23 Dainow Decl., Exh. P at 9 (emphasis added).  These orders, too, expressly restrict the DOE's reimbursement obligations to the days the students utilized the transportation services and attended school.

In sum, for M.B. (for the brief period between July 6, 2022, to July 18, 2022), J.B., S.J.D., Z.C., and D.O., the DOE is obligated to reimburse costs for transportation that was in fact provided—as in, only for those days when the students took the transportation to the school.  The DOE is not obligated, under the plain terms of those orders, to pay for transportation on days when the students did not attend school.  Accordingly, with respect to these Plaintiffs, Defendants'

motion for summary judgment is granted, and Plaintiffs' motion for summary judgment is denied. These Plaintiffs shall submit to the DOE paperwork reflecting the days of the students' actual attendance at school so that the DOE can process the reimbursements consistent with this Opinion and Order.

## C.   Students with Orders Unclear as to the Scope of the DOE's Reimbursement Obligation for Transportation Services

Lastly, for the two remaining students at issue (A.D. and O.F.), the relevant orders are unclear as to whether they require the DOE to reimburse transportation costs only for days attended or for the full transportation contract regardless of actual attendance.  The September 26, 2022 pendency order for A.D. directs the DOE to "fund [A.D.]'s door-to-door special transportation to and from [A.D.]'s home and iBRAIN."  3/22/23 Dainow Decl., Exh. L at 2.  And the October 28, 2022 pendency order for O.F. similarly requires the DOE to "fund transportation for [O.F.] to and from [iBrain]."  *Id.*, Exh. N at 5.[8]

---

[8] The parties dispute whether the DOE's reimbursement obligations arise from O.F.'s October 28, 2022 pendency order, which orders the DOE to fund O.F.'s transportation costs to and from iBrain, 3/22/23 Dainow Decl., Exh. N, or the subsequent February 13, 2023 FOFD, which omits any directives for the DOE to fund transportation costs, *id.*, Exh. M.  *See* Pls. Counter 56.1 Stmt. ¶ 21.  The parties appear to agree, however, that if O.F.'s parent appealed the February 13, 2023 FOFD, pendency would have reverted to the October 28, 2022 pendency order.  *See id.* ¶¶ 21, 24; Defts. Reply Br. at 5 ("In the event that O.F.'s parent does appeal, pendency would revert to the above pendency order.").  Plaintiffs maintain that such an appeal was taken.  Pls. Counter 56.1 Stmt. ¶ 21 ("Plaintiffs affirmatively state that because this case is currently on appeal, the FOFD (dated February 13, 2023) is not a final order.").  But the DOE contends that it "has no record that such an appeal has yet been served."  Defts. Reply Br. at 5.  The parties have provided no further information since they filed their summary judgment briefs as to whether an appeal of the February 13, 2023 FOFD was taken.

Accordingly, to the extent that O.F.'s parent appealed the FOFD and pendency reverted to the October 28, 2022 pendency order, the contours of that order as to the DOE's reimbursement obligations for transportation costs should be clarified on remand.  To the extent such appeal was *not* taken, the administrative body should clarify whether the February 13, 2023 FOFD supersedes the October 28, 2022 pendency order with respect to DOE's reimbursement obligations for transportation costs for any portion of the 2022-2023 school year.  Unlike the case with S.J.D.'s

For these, the Court remands for further clarification.  *See Davis*, 2023 WL 5917659, at *5 (finding that, in nearly identical circumstances, the same language "of the applicable orders alone does not afford a clear answer" and that both parties "proffer plausible interpretations of the relevant language"); *see also Hidalgo v. New York City Dep't of Educ.*, No. 20 Civ. 98 (JGK), 2021 WL 2827037, at *5 (S.D.N.Y. July 7, 2021) ("A court may remand a proceeding when it needs further clarification or does not have sufficient guidance form the administrative agencies." (quoting *T.L.*, 938 F. Supp. 2d at 436)).  For A.D., the Court remands to IHO Charrington, who issued the September 26, 2022 pendency order.  *See* 3/22/23 Dainow Decl., Exh. L.  For O.F., the Court remands to IHO Ezzati, who issued the both the October 28, 2022 pendency order, *id.*, Exh. N, and the February 13, 2023 FOFD, *id.*, Exh. M.  As the court noted in *Davis*, "[t]he IHOs are plainly in the best position to interpret their own orders and, to the extent the existing orders do not resolve the parties' dispute, further factfinding may be warranted."  *Davis*, 2023 WL 5917659, at *5.  Accordingly, the Court denies without prejudice both parties' motions for summary judgment as to A.D. and O.F.

## IV.  Conclusion

For the foregoing reasons, the Court grants Plaintiffs' motion for summary judgment as to R.N., M.B. (for costs starting on July 18, 2022), and M.C., and denies Defendants' summary judgment motion as to those students.  Plaintiffs shall submit to the DOE paperwork reflecting the terms of the relevant transportation contracts so that the DOE can process the reimbursements for these students, consistent with this Opinion and Order.  The Court grants Defendants' motion for summary judgment as to M.B. (for the brief period between July 6, 2022, to July 18, 2022), J.B.,

---

pendency order and subsequent FOFD, *see supra* n.7, the February 13, 2023 FOFD for O.F. makes no express reference to the DOE's reimbursement obligations for transportation costs.

S.J.D., Z.C., and D.O., and denies Plaintiffs' summary judgment motion as to those students.  For them, Plaintiffs shall submit to the DOE paperwork reflecting the days of the students' actual attendance at school so that the DOE can process the reimbursements consistent with this Opinion and Order.  Finally, the Court denies without prejudice both parties' motions for summary judgment as to A.D. and O.F., and the Court remands A.D.'s case to IHO Charrington and O.F.'s case to IHO Ezzati for further proceedings not inconsistent with this Opinion and Order.

Within seven days of this Opinion and Order, the parties shall submit a joint status letter explaining whether they believe there are any remaining issues for the Court to resolve in this case, and whether the Court should issue judgment.  In the event the parties agree that it is appropriate at this point for the Court to issue judgment, the parties also shall confer and file a proposed judgment consistent with this Opinion and Order.

The Clerk of the Court is respectfully directed to close Docket Numbers 48 and 64.

SO ORDERED.

Dated: September 30, 2023
       New York, New York

JOHN P. CRONAN
United States District Judge